*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0348**

State of Minnesota,
Respondent,

vs.

Jodi Lynette Lacy,
Appellant.

**Filed February 8, 2016
Affirmed
Klaphake, Judge**[*]

Rice County District Court
File No. 66-CR-13-2463

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John L. Fossum, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Terry A. Watkins, Watkins Law Office, LLC, Faribault, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Klaphake, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

On appeal from her conviction of a fifth-degree controlled substance crime following a stipulated-evidence court trial, appellant Jodi Lynette Lacy challenges the district court's order denying her suppression motion. Lacy argues that the seizure of a baggie containing methamphetamine from her pocket was an impermissible extension of a *Terry* search and that she was subjected to an unlawful custodial interrogation. Because the seizure of the baggie was lawful as a search incident to arrest and because Lacy was not subjected to a custodial interrogation, we affirm.

## DECISION

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). When the facts are undisputed, "our review is entirely de novo." *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The federal and state constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are generally unreasonable unless they are covered under an exception to the warrant requirement. *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014). The United States Supreme Court recognized one of these exceptions when it held that "a law-enforcement officer may conduct a protective pat search of a person's outer clothing so long as the officer has a reasonable, articulable suspicion that the person whom the officer has lawfully

detained may be armed and dangerous." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 26-27, 88 S. Ct. 1868, 1882-83 (1968)). The Supreme Court has also held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595 (1981) (footnote omitted).

Here, officers were executing a warrant to search for narcotics at the home of Michael Dulac. Officers observed Lacy "working on the dead bolt lock at the front door threshold" when they arrived to execute the search warrant. Because Lacy was on the premises when officers were executing a warrant to search for contraband, it was lawful for the officers to detain Lacy.

The officers could conduct a protective pat search of Lacy if they had reasonable, articulable suspicion that she was armed and dangerous. *Lemert*, 843 N.W.2d at 230. Lacy was discovered in the process of opening Dulac's front door. Officers knew that Dulac had a history of assault and that he both "always" carried a knife and that he had "many knives and swords . . . hanging on his walls inside his house." A large knife was hanging from Dulac's hip when he was searched. The Minnesota Supreme Court has noted that "a substantial nexus exists between drug dealing and violence." *Id.* at 232. Because of Lacy's connection to Dulac and the presence of weapons on the premises, officers had a reasonable suspicion that Lacy could be armed and dangerous. Although Lacy was placed in handcuffs, a protective pat search was lawful during her detention. *Lemert*, 843 N.W.2d at 230.

3

As Officer Catherine Spicer began the pat down, Lacy said that she had a baggie in her front pocket that was not hers and that she was going to dispose of the baggie for Michael. This statement gave Officer Spicer probable cause to arrest Lacy. Normally, a "protective pat search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 230 (quotations omitted). But "police who have probable cause to arrest a suspect can then conduct a search incident to arrest even if the search occurs before the arrest." *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997). "A search incident to arrest can extend to small containers on the person and can be followed by a warrantless seizure of discovered contraband." *Id.* "[P]robable cause to arrest requires police to have a reasonable belief that a certain person has committed a crime." *Id.*

Officer Spicer was executing a search warrant for narcotics at Dulac's residence and was aware that Dulac had been involved in multiple narcotics offenses. On these facts, once Lacy made the statement about possessing a baggie for Dulac, Officer Spicer had probable cause to believe that the baggie contained narcotics. Because Officer Spicer had probable cause to arrest Lacy after Lacy's statement, the later seizure of the baggie was lawful as a search incident to arrest.

Lacy also argues that her statement to Officer Spicer about the baggie should be suppressed because she was subjected to a custodial interrogation without first being given a *Miranda* warning. "Statements made by a suspect during a 'custodial interrogation' are admissible only if the statement was preceded by a *Miranda* warning." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010) (citing *Miranda v. Arizona*, 384 U.S. 436, 444-45,

4

86 S. Ct. 1602, 1612 (1966)). To require a *Miranda* warning, a suspect must be both in custody and subject to interrogation. *Id.* "An interrogation is custodial if, based on all the surrounding circumstances, a reasonable person under the circumstances would believe that he or she was in police custody of the degree associated with formal arrest." *Id.* (quotation omitted). Factors that may indicate a suspect is in custody include "police interviewing the suspect at the police station; the officer telling the individual that he or she is the prime suspect; officers restraining the suspect's freedom; the suspect making a significantly incriminating statement; the presence of multiple officers . . .; and a gun pointing at the suspect." *Id.* (quotation omitted). The Minnesota Supreme Court has held that "briefly handcuffing a suspect while the police sort out the scene of an investigation does not per se transform an investigatory detention into an arrest." *State v. Munson*, 594 N.W.2d 128, 137 (Minn. 1999).

Here, police handcuffed Lacy to detain her for officer safety, but that form of detention was not conclusive as to whether she was in police custody for purposes of *Miranda*. Officer Spicer told Lacy that she would be performing a pat down and that Lacy was being detained, but she never told Lacy that she was under arrest and did not conduct a full search of Lacy until after Lacy's formal arrest. In addition, Officer Spicer alone conducted the pat down and never pointed her gun at Lacy, and the encounter did not take place at a police station. Under the totality of these circumstances, Lacy was not in custody when she admitted to possessing the baggie.

Further, Lacy was not subjected to interrogation. "*Miranda* safeguards apply whenever a person is subjected to either express questioning or its functional equivalent."

5

*State v. Edrozo*, 578 N.W.2d 719, 724 (Minn. 1998) (quotation omitted).  The functional equivalent of express questioning means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Id.* (quotation omitted).

Officer Spicer testified that she never asked Lacy any questions before conducting the pat down, and the pat down itself is not an action that would elicit any sort of incriminating statement.  Lacy's statement about the baggie was therefore "a spontaneous, volunteered statement not made in response to 'interrogation.'"  *See State v. Hale*, 453 N.W.2d 704, 707 (Minn. 1990).  Because Lacy was not subjected to a custodial interrogation, Officer Spicer was not required to give Lacy a *Miranda* warning.

**Affirmed.**